**ATTACHMENT A**
**STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between August 2018 and August 2019, the Defendant, **ANTHONY KENNETH DOTSON JR., also known as "Streetz," "Ghost," and "Rico"** ("**DOTSON**"), conspired with **Marvin Gray**, also known as "Marv" ("**Gray**"), **James Harvey**, also known as "Fat Bread" and "Patches" ("**Harvey**"), **Marcellus Woodland**, also known as "Cellus" ("**Woodland**"), and **Tiara Mackall**, also known as "Tee" ("**Mackall**"), and others, to distribute fentanyl, heroin, cocaine, and cocaine base in the District of Maryland and elsewhere. The quantity of controlled substances involved in the offense and foreseeable to **DOTSON** was at least 160 grams but less than 280 grams of fentanyl.

In general, **DOTSON** and **Gray** were drug distributors who operated in Charles County, Maryland, and who sold controlled substances to users and street-level drug dealers. **Harvey**, **Woodland**, and **Mackall** were subordinate distributors who sold controlled substances on **DOTSON**'s and **Gray**'s behalf.

In May 2018, Confidential Source 1 told law enforcement that **Harvey** was a "runner," or a subordinate drug dealer for **DOTSON**. Three months later, at the direction of law enforcement, Confidential Source 1 made a controlled purchase of fentanyl mixed with heroin from **Harvey**.

Between January and May 2019, at the direction of law enforcement, confidential sources made several controlled purchases of fentanyl and heroin from **DOTSON** and **Gray**. For example, on May 21, 2019, **DOTSON** texted Confidential Source 2 "Flameback," indicating that **DOTSON** had potent fentanyl for sale. That day, at the direction of law enforcement, Confidential Source 2 made a controlled purchase of fentanyl mixed with heroin from **DOTSON** and **Gray**. Confidential Source 2 also previously told law enforcement Confidential Source 2 had seen **DOTSON** with heroin or fentanyl broken down into one-gram, five-gram, and 10-gram quantities for sale.

On June 13, 2019, **DOTSON** called **Coconspirator A** (one of **DOTSON**'s suppliers) and explained that he only had "14 of this raw . . . left," meaning that **DOTSON** only had 14 grams of fentanyl in his drug supply. Three days later, **DOTSON** told **Coconspirator A** that he needed "fetty" and that he could pay "1,100 for half," meaning that **DOTSON** would purchase half an ounce (or 14 grams) of fentanyl from **Coconspirator A**. **DOTSON** and **Coconspirator A** then met in Hillcrest, Maryland, where **Coconspirator A** supplied **DOTSON** with 14 grams of fentanyl. Two days after that meeting, **DOTSON** called **Coconspirator A** and ordered "the same thing," meaning an additional 14 grams of fentanyl.

On June 20, 2019—while distributing fentanyl on **DOTSON**'s behalf—**Woodland** called **DOTSON** and told him that **Woodland** had "17 little ones . . . [and] bigs" left in his supply. By this, **Woodland** meant that he had 17 half-gram quantities and 11 gram quantities of fentanyl that

he could sell. During the same conversation, **Woodland** told **DOTSON** that he had a firearm, and **DOTSON** told **Woodland** that he had a ".45, Smith & Wesson . . . a nine . . . [and] another little .38." **DOTSON** then left the area to compete in an amateur car racing event, and gave his phone to **Woodland** ("the drug phone") so that **Woodland** could continue selling fentanyl to **DOTSON**'s customers. Over the next four days, **Woodland** distributed fentanyl to **DOTSON**'s Maryland-based drug customers.

In June and July 2019, **Harvey**—working at **DOTSON**'s direction—sold fentanyl to **DOTSON**'s customers. For example, on June 12, 2019, **Harvey** sold $200 of fentanyl to Individual 2. One week later, **Harvey** distributed fentanyl to one of **DOTSON**'s customers in Waldorf, Maryland. Similarly, on July 8, 2019, **Harvey** distributed "two bags" of fentanyl to Individual 5, who was one of **DOTSON**'s customers. Later that month, **Harvey** helped **DOTSON** open a storage locker in Waldorf, Maryland that the organization used as a location to store drug proceeds and drug paraphernalia.

On July 3, 2019, **DOTSON** and **Gray** separately travelled to a hotel in La Plata, Maryland, where they each met with and sold a distribution quantity of fentanyl to Individual 2.

On July 9, 2019, **DOTSON** and **Gray** discussed strategies for selling drugs over the phone. During that conversation, **Gray** told **DOTSON**, "I'm a bag up most of them all in balls. I got like, I got like 70 of good," meaning that he had 70 grams of high-quality controlled substances and intended to package the drugs into eight balls, or 3.5-gram quantities. Five days later, **Gray** told **DOTSON** over the phone that he received an order for "14 grams . . . of down," meaning 14 grams of fentanyl. The next month, on August 4, 2019, **DOTSON** texted **Gray** a photograph depicting 13.99 grams of fentanyl on a digital scale, then asked **Gray** to delete the text message.

On July 27, 2019, law enforcement intercepted communications between **DOTSON** and **Woodland** indicating that **Woodland** was in possession of **DOTSON**'s fentanyl and was distributing that fentanyl on **DOTSON**'s behalf. That day, law enforcement attempted to conduct a traffic stop of **Woodland**, who failed to stop for 3.6 miles and instead led officers on a low-speed police chase. During the pursuit, **Woodland** discarded **DOTSON**'s fentanyl from the window of **Woodland**'s Range Rover.

On August 5, 2019, **DOTSON**, **Gray**, and **Mackall** met so that **DOTSON** could give **Mackall** his drug phone. Four days later, while **Mackall** was using **DOTSON**'s phone to sell fentanyl on **DOTSON**'s behalf, **Mackall** met with Individual 5, who was one of **DOTSON**'s customers. After **Mackall** and Individual 5 engaged in a hand-to-hand drug transaction, law enforcement arrested **Mackall**, who was in possession of 21 red plastic bags and 13 blue plastic bags containing fentanyl. After **Mackall** was arrested, **DOTSON** called **Gray** and told him, "they got the phone and everything dog. Somebody had to set her up."

On August 15, 2019, law enforcement executed search warrants on nine different locations, including **DOTSON**'s business location and the residences of **DOTSON**, **Gray**, and **Harvey**. In **DOTSON**'s residence, which was located in Clinton, Maryland, law enforcement seized the following:

1. $11,305 in United States currency.

2. A 2014 Chevrolet Silverado 1500 LTZ Pick-up truck with Vehicle Identification Number ("VIN") 3GCUKSECXEG181699 that was purchased with illegal drug proceeds.

3. A 2007 Ford F-150 XLT Pick-up truck with VIN 1FTRW14W27FB44490 that was purchased with illegal drug proceeds.

4. A Smith and Wesson SD9VE 9mm handgun bearing serial number HFJ8778.

5. A Taurus Model PT .45 caliber handgun bearing serial number NCU59315.

6. 47 rounds of 9mm ammunition.

7. 12 rounds of .45 ACP ammunition.

8. 13 rounds of .38 special ammunition.

9. 24 rounds of .380 ACP ammunition.

10. 50 rounds of .40 caliber ammunition.

In **DOTSON**'s business location in Waldorf, Maryland, law enforcement seized the following:

1. A 2019 Homemade Enclosed Trailer with VIN AC246148MD that was purchased with illegal drug proceeds.

2. A 1986 Ford Mustang Race Car with VIN 1FABP26A8GF277847 that was purchased with illegal drug proceeds.

3. A 2011 Yamaha YDR Golf Cart with VIN JW8-009467 that was purchased with illegal drug proceeds.

In **Gray**'s residence, law enforcement seized a loaded .40 caliber handgun, a loaded Thompson Auto-Ordinance .45 caliber handgun, a loaded Taurus .380 caliber handgun, and an unloaded Taurus 9mm handgun, along with approximately 15 bags containing controlled substances. In **Gray**'s Ford truck, law enforcement found three loaded 9mm magazines, a loaded .45 caliber magazine, and a box of 50 .357 caliber ammunition.

Prior to August 15, 2019, **DOTSON** had been, and knew that he had been, previously convicted of a crime punishable by imprisonment for a term exceeding one year and his civil rights had not been restored. Prior to August 15, 2019, the Smith and Wesson SD9VE 9mm handgun bearing serial number HFJ8778 and the Taurus Model PT .45 caliber handgun bearing serial

number NCU59315 ("the firearms") were manufactured outside of Maryland and therefore travelled in interstate commerce. **DOTSON** possessed the firearms and ammunition recovered from **DOTSON**'s residence in order to commit or to facilitate his distribution of controlled substances.

SO STIPULATED:

_____
Gregory Bernstein
Erin Pulice
Assistant United States Attorneys

_____
Anthony Kenneth Dotson
Defendant

_____
William Brennan, Esq.
Counsel for Defendant